# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ROY R. WOODS, ) | CASE NO.  1:10-cv-1714 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | **MEMORANDUM OPINION AND** |
| Defendant. ) | **ORDER** |

Plaintiff, Roy R. Woods ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying Plaintiff's applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("the Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is REVERSED and this case is REMANDED for further proceedings consistent with this Opinion and Order.

## I. PROCEDURAL HISTORY

On July 26, 2004, Plaintiff protectively filed applications for DIB and SSI. (Tr. 14.) Both applications alleged a disability onset date of July 14, 2004. (Tr. 14.) Plaintiff's applications were denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 14.)

On December 5, 2007, an ALJ held Plaintiff's hearing by video conference. (Tr. 14, 254.) Plaintiff appeared, was represented by an attorney, and testified. (Tr. 14.) A medical expert ("ME") and vocational expert ("VE") also appeared and testified. (Tr. 14.) On March 10, 2008, the ALJ found Plaintiff not disabled. (Tr. 22.) On June 7, 2010, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision. (Tr. 5.)

On August 5, 2010, Plaintiff timely filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) On January 10, 2011, Plaintiff filed his Brief on the Merits. (Doc. No. 18.) On March 10, 2011, the Commissioner filed his Brief on the Merits. (Doc. No. 20.) On March 25, 2011, Plaintiff filed a Reply Brief. (Doc. No. 21.)

Plaintiff asserts two assignments of error relating to the ALJ's analysis of Plaintiff's treating psychologists' opinions: (1) the ALJ failed address the opinions of Dr. Jay D. Haar, M.D.; and (2) the ALJ failed to give good reasons for giving the opinions of Dr. Nicomedes M. Sansait, M.D., less than controlling weight.[1]

---

[1] Plaintiff asserted a third assignment of error in his Brief on the Merits: that the ALJ omitted part of a state agency reviewing physician's limitations in his residual functional capacity ("RFC") determination. (Pl.'s Br. 11-12.) However, Plaintiff conceded in his Reply Brief that this alleged error was harmless. (Pl.'s

2

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was 34 years old on his alleged disability onset date. (Tr. 20.) He has at least a high school education and is able to communicate in English. (Tr. 20.) He has past relevant work experience as a laborer and machine press operator. (Tr. 20.)

### B. Medical Evidence

Plaintiff's assignments of error relate solely to his mental symptoms and limitations; therefore, the following recitation of the medical evidence will regard only the evidence of Plaintiff's mental symptoms and limitations.

On October 22, 2004, Plaintiff presented to Mansfield Hospital's emergency department with a chief complaint of depression. (Tr. 167.) Dr. G. Mark Seher, D.O., attended to Plaintiff, diagnosed Plaintiff with major depression, and admitted Plaintiff for further psychiatric evaluation. (Tr. 168.) Dr. Yogesh K. Desai, M.D., performed a psychological evaluation of Plaintiff and diagnosed Plaintiff with "Major depression, single episode, rule/out mood disorder, due to physical condition." (Tr. 170.) Dr. Desai indicated that Plaintiff reported the following. Plaintiff suffered a great deal of stress because: his used car business failed; he lost his job at a factory after injuring his neck; he filed for bankruptcy; he had been living in a camper with his mother; his ex-wife would not allow him to see their children; he had not been able to pay child support; and he had relationship problems with his girlfriend. (Tr. 169.) Dr. Desai assigned

---

Reply 3.) Accordingly, the Court need not address this assignment of error.

Plaintiff a Global Assessment of Functioning ("GAF") score of between 31 and 40,[2] and prescribed Plaintiff with the antidepressants Zoloft and Desyrel.  (Tr. 170.)  Dr. Desai indicated that Plaintiff was encouraged to participate in group therapy, occupational therapy, recreational therapy, and activity therapy.  (Tr. 170.)

On April 22, 2005, state agency reviewing psychologist Melanie A. Bergsten, Ph.D., reviewed Plaintiff's medical records, assessed Plaintiff's mental RFC, and performed a psychiatric review technique.  (Tr. 199-216.)  Dr. Bergsten's mental RFC assessment is as follows.  Plaintiff was moderately limited in his abilities to maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the public; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting.  (Tr. 199-200.)  Plaintiff was otherwise not significantly limited.  (Tr. 199-200.)

In her psychiatric review technique, Dr. Bergsten reviewed Plaintiff under Listing 12.04 from 20 C.F.R. Part 404, Subpart P, Appendix 1, regarding affective disorders and found the following.  (Tr. 203-213.)  Plaintiff was moderately limited in his abilities to perform activities of daily living and maintain social functioning.  (Tr. 213.)  Plaintiff was mildly limited in his ability to maintain concentration, persistence, or pace.  (Tr.

---

[2] A GAF score between 31 and 40 indicates some impairment in reality testing or communication or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood.  A person who scores in this range may have illogical or irrelevant speech, and may avoid friends, neglect family, and be unable to work.  *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. rev., 2000).

4

213.)  Plaintiff had no episode of decompensation.  (Tr. 213.)

Between November 24, 2004, and September 13, 2005, Plaintiff underwent counseling with Dr. Jay D. Haar, M.D.  (Tr. 126, 229-35.)  On January 13, 2005, Dr. Haar reported that, "[e]ven though [Plaintiff] has some struggle with his physical problems and nerves, he is coping fairly well and motivated to do better."  (Tr. 235.)  On February 1, 2005, Dr. Haar submitted a medical source statement to the Bureau of Disability Determination that indicated the following.  Plaintiff complained of depression and anxiety.  (Tr. 127.)  Plaintiff's "frustration tolerance may be lacking."  (Tr. 127.)  Plaintiff's activities of daily living were restricted by pain in the neck and back, and by tremors on the right side.  (Tr. 127.)  Plaintiff struggled with his interests, habits, and behavior.  (Tr. 127.)  Plaintiff's current relationship problems consisted of a "custody battle" with his ex-wife and an unhappy girlfriend.  (Tr. 127.)  Plaintiff struggled daily with his depression and anxiety.  (Tr. 127.)  Plaintiff had suffered his depression and anxiety for "many years."  (Tr. 128.)  Plaintiff's ability to tolerate stress was "not well."  (Tr. 128.)  Dr. Haar diagnosed Plaintiff with recurring major depression; however, Dr. Haar indicated that he could not answer how Plaintiff's symptoms responded to treatment because Plaintiff was new to him.  (Tr. 128.)

Dr. Haar noted throughout the rest of 2005 that Plaintiff was depressed, anxious, or frustrated primarily about the "custody battle" with his ex-wife.  (Tr. 229-35.)  Dr. Haar continuously reported that Plaintiff did not suffer side-effects from his medications; that no lab work was performed on Plaintiff; and that there were no changes in Plaintiff's diagnosis and treatment plan.  (Tr. 219-35.)

On May 8, 2007, Plaintiff presented to Community Counseling Services, Inc.,

5

with complaints of anxiety and panic attacks. (Tr. 223.) Psychiatrist Nicomedes M. Sansait, M.D., attended to Plaintiff and indicated that Plaintiff reported the following. (Tr. 224.) Plaintiff's anxiety and panic attacks were caused by his girlfriend, who had custody of their two-year-old daughter and used powder cocaine and marijuana, and by Plaintiff's attempt to obtain custody of their daughter. (Tr. 223.) Plaintiff suffered anxiety attacks every day that caused him to become shaky and unsteady, and caused him to feel hopeless. (Tr. 223.) Plaintiff sometimes thought about hurting himself, although he never had any plan or intent to do so. (Tr. 223.) Plaintiff had suffered his anxiety his entire life. (Tr. 223.) Dr. Sansait diagnosed Plaintiff with Major Depressive Disorder with anxiety; assigned Plaintiff a GAF score of 58;[3] determined that Plaintiff needed counseling and medication; and prescribed Plaintiff Prozac, Seroquel, and Lunesta. (Tr. 224.)

On August 15, 2007, Plaintiff returned to Dr. Sansait. (Tr. 221.) Dr. Sansait reported that Plaintiff's prescription for Lunesta was changed to a prescription for Ambien "because of insurance issues"; and that Plaintiff remained shaky and was "still not the best." (Tr. 221.) Dr. Sansait continued to proscribe Plaintiff medication. (Tr. 221.)

On September 6, 2007, Dr. Sansait authored a medical source statement concerning the nature and severity of Plaintiff's mental impairments. (Tr. 219-20.) Dr.

---

[3] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers. *See Diagnostic and Statistical Manual of Mental Disorders*, *supra* note 2.

Sansait indicated the following. Plaintiff had less than moderate limitations in his abilities to remember, understand, and follow simple instructions; maintain attention and concentration for two hour periods of time; and perform work activities at a reasonable pace. (Tr. 219.) Plaintiff had moderate limitations in his abilities to interact appropriately with others (*e.g.*, with the public, co-workers, and supervisors) and make judgments that are commensurate with the functions of unskilled work (i.e., make simple work-related decisions). (Tr. 220.) Plaintiff had marked limitations in his abilities to withstand the stresses and pressures of routine, simple, unskilled work, keep a regular work schedule, and maintain punctual attendance. (Tr. 220.) Plaintiff's limitations could be expected to last for at least twelve months. (Tr. 220.) Dr. Sansait did not provide an explanation for his summary findings despite the fact that the form on which he provided his summary findings indicated that it was important to explain the bases for any "marked" or "extreme" limitations. (Tr. 220.)

### C. Hearing Testimony

#### 1. Plaintiff's Testimony

Plaintiff testified at his hearing as follows. Plaintiff was fired from his last job as a laborer after missing five days of work in a year; two of those days were due to a neck injury. (Tr. 263.) He previously was fired from a job at a gas station for theft. (Tr. 263-64.) Plaintiff stopped presenting to Dr. Haar for treatment because: Plaintiff was not satisfied with Dr. Haar's medication treatment regimen, Dr. Haar's nurse attended to Plaintiff more often than Dr. Haar, and Plaintiff believed that he required counseling more than anything else. (Tr. 268-69, 277.) None of Plaintiff's doctor suggested that

7

Plaintiff be hospitalized. (Tr. 269.)

Plaintiff drove (although he has had panic attacks while driving), shopped for groceries, watched television, swept floors, cooked meals, washed dishes, did laundry, helped his sister and mother with chores and errands, and generally got along with his family.[4] (Tr. 279-80, 282-86.) But sweeping floors and doing dishes hurt Plaintiff's back and neck. (Tr. 289, 306-07.)

Plaintiff's anxiety attacks occurred once or twice a day and lasted for 10 or 20 minutes at a time. (Tr. 292.) They did not prevent Plaintiff from performing his past work, but they had since become more severe. (Tr. 294.)

### 2. The ME's and VE's Testimony

After reviewing Plaintiff's medical records, the ME testified that Plaintiff would be able to perform light work. (Tr. 295-97.) The ALJ then posed the following hypothetical person to the VE:

> Assume the existence of a 38-year-old person with a GED level of education and assume that the individual has the past relevant work that you have ascribed to the Claimant in your testimony. Assume that the individual is capable of performing work at a light exertional level and assume in addition that the individual from an emotional standpoint is upon [sic] as set forth in Exhibit 7F.[5]

(Tr. 302.) The VE testified that such a hypothetical person could not perform Plaintiff's past relevant work, but could perform other work as an assembler (for which there were

---

[4] Plaintiff also indicated in self-reports to the Social Security Administration that he played cards, read, prepared meals, and had no problems with personal care. (Tr. 102-05, 121.)

[5] Exhibit 7F is Dr. Bergsten's mental RFC assessment of Plaintiff. (*See* Tr. 199-201.)

8

"at least" 3,000 jobs in Ohio), packer (for which there were between 1,500 and 2,000 jobs in Ohio), and visual inspection sorter (for which there were "about" 2,000 jobs in Ohio). (Tr. 302-03.) The VE further testified that the numbers of jobs in the national economy could be determined by multiplying the numbers of jobs in Ohio by 35. (Tr. 304.)

The ALJ posed a second hypothetical to the VE:

> [L]et me ask you to assume everything I asked you to assume in the first hypothetical with respect to age, education, work background and exertional capacity, but in the second hypothetical assume the individual from an emotional standpoint is looked upon as set forth in the Exhibit 10F.[6]

(Tr. 304.) The VE testified that such a hypothetical person would not be able to perform any work. (Tr. 304.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 *and* 416.1201.

---

[6] Exhibit 10F is Dr. Sansait's September 6, 2007, medical source statement. (*See* Tr. 219-20.)

9

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV.     SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2.   The claimant has not engaged in substantial gainful activity since July

10

                14, 2004, the alleged onset date.

3. The medical expert, a [sic] orthopedic physician, reviewed the medical evidence and testified at hearing that the claimant has the following severe impairments: cervical spondylosis involving a disorder of the back; and an affective disorder, which is under good control with prescribed medications.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that based on the claimant's physical impairments of a disorder of the back with cervical spondylosis, the claimant has the residual functional capacity to perform light exertional level work . . . . Based on the claimant's mental impairment of an affective disorder, the claimant has the mental capacity to perform unskilled simple repetitive tasks and also some more complex tasks in an environment with only moderate interaction with the general public.

6. The claimant is unable to perform any past relevant work.

. . . . .

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 14, 2004 through the date of this decision.

(Tr. 16-21.)

### V.  LAW & ANALYSIS

**A.  Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether

11

the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.  The ALJ's Assessment of Plaintiff's Treating Psychologists

Plaintiff contends that the ALJ erred because he failed to mention Dr. Haar's opinions. For the reasons set forth below, the Court finds that although the ALJ erred in failing to mention Dr. Haar's opinions, such error was harmless and is, therefore, not a basis for remand.

12

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted).  If the opinion of a treating source is not accorded controlling weight, an ALJ must consider certain factors in determining what weight to give the opinion, including:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; and (5) the specialization of the treating source.  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007) (citing *Wilson*, 378 F.3d at 544 and 20 C.F.R. § 404.1527(d)(2)).  If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (1996)).

Here, it is not disputed that Dr. Haar is a treating source; therefore, the ALJ's complete failure to mention Dr. Haar's opinions plainly violated the Social Security regulations.  *Bowen*, 478 F.3d at 747.  However, the Sixth Circuit has noted in dicta that such a failure may amount to harmless error if the treating source's opinion is "so patently deficient that the Commissioner could not possibly credit it."  *Wilson*, 378 F.3d at 547.  The Court concludes that Dr. Haar's opinions are so patently deficient that the

ALJ's failure to mention them was harmless error.

Although Dr. Haar noted that he had seen Plaintiff since November 2004, Dr. Haar did not provide any opinion on the extent to which Plaintiff's symptoms limited Plaintiff.  Dr. Haar's February 1, 2005, medical source statement indicates only that Plaintiff suffered depression; Plaintiff "struggled" with his symptoms; and Plaintiff was "not well."  Dr. Haar did not provide any objective bases for his opinions.  Moreover, Dr. Haar declined to opine as to the effectiveness of any treatments because Plaintiff was a new patient.  In Dr. Haar's subsequent reports, Dr. Haar merely reiterated that Plaintiff suffered depression, anxiety, and frustration.  Furthermore, Dr. Haar continuously noted that Plaintiff did not suffer side-effects from his medications; that no lab work was performed on Plaintiff; and that there were no changes in Plaintiff's diagnosis and treatment plan.  In short, Dr. Haar's opinions provide no basis to conclude that Plaintiff was disabled, or that Plaintiff had a more restrictive RFC than the ALJ found.  Accordingly, remand for a review of Dr. Haar's opinions is not necessary.  *See Wilson*, 378 F.3d at 547 (quoting *N.L.R.B. v. Wyman-Gordon*, 394 U.S. 759, 766 n. 6 (1969) (plurality opinion)) (noting that, where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"); *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989)) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

However, the Court finds that remand is necessary for re-evaluation of Dr.

Sansait's opinions. It is not disputed that Dr. Sansait is a treating source. The ALJ's assessment of Dr. Sansait's opinions is as follows:

> [A]s far as Dr. Sansait's "Mental Residual Functional Capacity" dated September 6, 2007, in concerned, I find that it is self-contradictory. First of all it reports that the claimant is perfectly capable of concentrating for two hours at a time, remembering, understanding, and following simple directions; as well as performing work activities at a reasonable pace. Yet despite this, the report indicates that the claimant could not withstand the stresses and pressures of simple unskilled work. Moreover, Dr. Sansait, a psychiatric physician, assessed the claimant with a Global Function Score of 58, which he noted was appropriate for the claimant [and] hardly of a severity that would preclude even unskilled simple work. Finally, this doctor appears to have not seen the claimant on more than four occasions, finding him never to be out of control, deluded or suffering from a psychosis at all, and with full capacity to make his own judgments.

(Tr. 19) (internal citations omitted). Plaintiff contends that the abilities to concentrate for two hours at a time, remember, understand, follow simple directions, and perform work activities at a reasonable pace are not inconsistent with an inability to withstand the stresses and pressures of simple unskilled work. The Court agrees. The Social Security Regulations recognize that "[b]ecause response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job." S.S.R. 85-15, 1985 WL 56857, at *6 (1985)). In other words, it does not necessarily follow that if Plaintiff is able to concentrate, remember, understand, follow simple instructions, and perform work activities at a reasonable pace, then Plaintiff must be able to cope with the stress of such work. Other factors could cause stress; indeed, Dr. Sansait opined that Plaintiff suffered marked limitations in his abilities to keep a regular work schedule and maintain punctual attendance.

Furthermore, as Plaintiff notes, it is not clear how the GAF score Dr. Sansait

15

assigned to Plaintiff makes Dr. Sansait's opinions self-contradictory.  The ALJ found that the GAF score was inconsistent with a preclusion from unskilled simple work, but Dr. Sansait did not opine that Plaintiff was precluded from unskilled simple work. Rather, Dr. Sansait opined that Plaintiff suffered certain limitations, and the ALJ did not state or explain how the GAF score was inconsistent with those limitations.

Finally, it is not clear how evidence that Plaintiff was not out of control or deluded and could make judgments during four visits with Dr. Sansait contradicts Dr. Sansait's opinions of Plaintiff's limitations.

Because the ALJ's assessment of Dr. Sansait's opinions is based on a non-sequitur and is otherwise not sufficiently clear, the Court cannot determine the weight the ALJ give to Dr. Sansait's opinions and sufficient reasons for that weight. Accordingly, remand is necessary for the ALJ to clarify his assessment of Dr. Sansait's opinions.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

*s/ Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: September 23, 2011

16